UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>NBC GENERAL CONTRACTORS CORPORATION,<br><br>        Defendant. | Case No.  09-cv-05363-SBA   (JSC)<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 154 |

Plaintiff Harford Fire Insurance Company brought claims against Defendants Monica Ung ("Ung"), Dennis Chow ("Chow"), and NBC General Contractors ("NBC") for breach of an indemnity agreement.  The district court granted judgment in Plaintiff's favor as to the claims against the individual defendants and Plaintiff now seeks default judgment as to the claims brought against Defendant NBC.  The Motion for Default Judgment (Dkt. No. 154) was referred to the undersigned for a report and recommendation.  The Court finds that the motion is suitable for determination without oral argument and VACATES hearing scheduled for September 4, 2014.  *See* Civil Local Rule 7–1(b).  For the reasons given below, the Court recommends that Plaintiff's Motion be GRANTED.

**BACKGROUND**

The following factual summary is taken from the District Court's order granting Summary Judgment as to Defendant Ung.

> On February 27, 2006, Hartford and the Defendants entered into a General Indemnity Agreement ("Indemnity Agreement" or "agreement") as partial consideration for Hartford's issuance of surety bonds on behalf of NBC, Ung, and Casey Enterprises in connection with Defendants' performance of construction services on various projects in the San Francisco Bay Area. *See* Levesque Decl. ¶¶ 7, 9-10, Exh. 1, Dkt. 127-2. Ung signed the agreement as

> the President of NBC and as an individual, while Chow signed the agreement as an individual. *Id*., Exh. 1. Pursuant to the Indemnity Agreement and at the request of the Defendants, Hartford issued performance and payment bonds for five projects (collectively, "the Projects") and three "Contractors License Bonds" (collectively, "the Bonds"). *Id*. ¶¶ 10-11. The Projects are referred to as the El Cerrito Project, Fox Courts Project, Laney College Project, College of Alameda Project, and 81st Avenue Project. *Id*. ¶ 10.
>
> Under the terms of the Indemnity Agreement, the Defendants agreed to "indemnify, exonerate and hold Hartford harmless from all loss, liability, damages and expenses . . .which Hartford incurs or sustains (1) because of having furnished any Bond, (2) because of the failure of an Indemnitor to discharge any obligation[] under this Agreement, (3) in enforcing any of the provisions of this Agreement, (4) in pursuing the collection of any loss incurred hereunder, or (5) in the investigation of any claim submitted under any Bond. . . ." Levesque Decl. ¶ 9, Exh. 1 ¶ 5. Sometime after the Bonds were issued, "[o]wners, obligees, subcontractors, suppliers and materialmen providing labor and materials on the Projects alleged NBC defaulted on certain performance and payment obligations. . . ." Levesque Decl. ¶ 12. According to Hartford, "said obligations fall within Hartford's obligations under the Bonds." *Id*.
>
> In October 2008, Hartford became aware that NBC was having problems meeting its contractual obligations to its subcontractors and suppliers. Levesque Decl. ¶ 35. Thereafter, Hartford requested in writing that the Indemnitors indemnify, exonerate and hold Hartford harmless from all loss, liability, damages and expenses that Hartford incurs because of having issued the Bonds. *Id*.
>
> From the end of 2008 to the filing of the instant motion, Hartford repeatedly communicated with the Defendants, both in writing and via telephone and e-mail, regarding claims against the Bonds and the Defendants' obligations under the Indemnity Agreement. Levesque Decl. ¶ 36.

(Dkt. No. 137 at 2-3.) Plaintiff has re-submitted the aforementioned Declaration from Richard L. Levesque in support of this motion.[1] (Dkt. No. 154-1.)

Plaintiff contends that it has incurred $6,096,345.62 in losses related to claims paid under the Bonds, $1,373,605.28 in attorney's and consultant's fees and costs, and that it has recovered $3,478,296.73 in funds from third-parties. Plaintiff thus contends that it suffered a net loss of $3,991,654.17 under the Bonds. (Dkt. No. 127-2 at ¶ 13 & Ex. 2 (Claims Payment History Report).)

---

[1] Plaintiff seeks judicial notice of the Levensque declaration; however, it is unnecessary for the Court to take judicial notice of filings within this action.

2

1     Plaintiff filed the underlying action on November 16, 2009.  All three Defendants, Ung,
2 Chow, and NBC, answered and were represented by the same counsel from McInerney & Dillon.
3 Before any substantive pleadings were filed, NBC filed a voluntary petition under Chapter 7 of the
4 United States Bankruptcy Court for the Northern District of California.  (Dkt. No. 34.)  Nearly a
5 year later, Defendant Ung likewise filed a voluntary petition under Chapter 11 of the United States
6 Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California.
7 (Dkt. No. 69.)  On February 25, 2013, summary judgment was entered in favor of Plaintiff as to all
8 claims against Defendant Chow.  (Dkt. No. 104.)  On March 5, 2013, the district court entered an
9 order administratively closing the case as to Defendants NBC and Ung in light of the pending
10 bankruptcy actions.  (Dkt. No. 107.) Thereafter, Plaintiff obtained an order from the bankruptcy
11 court lifting the automatic stay as to Ung. (Dkt. No. 110.)  The district court reopened the case as
12 to Ung on May 15, 2013 and subsequently granted summary judgment as to all claims against her.
13 (Dkt. Nos. 111 & 137.)

14     On October 4, 2013, Defendants' counsel McInerney & Dillon moved to withdraw.  (Dkt.
15 No. 117.)  While this motion was pending, the bankruptcy court issued a final decree closing
16 NBC's Chapter 7 case.  (Dkt. No. 149, Ex. 1.)  On March 6, 2013, the district court granted
17 counsel's motion to withdraw and ordered NBC to find substitute counsel within 30 days as a
18 corporation cannot represent itself in federal court.  (Dkt. No. 131.)   The order further stated that
19 "If NBC has not filed a substitution of counsel within thirty (30) days from the date this Order is
20 filed, Hartford shall move for entry of default." (*Id*. at 4.)   No appearance was made by substitute
21 counsel and Plaintiff moved for entry of default, which was granted. (Dkt. No. 135.)  Because it
22 was unclear whether the case had been reopened as to Defendant NBC following the bankruptcy
23 court's final decree, the undersigned issued an order to show cause and Plaintiff subsequently
24 moved to reopen the case. (Dkt. Nos. 147 & 148.)  The district court reopened the case on July
25 16, 2014 and default was again entered against Defendant NBC on July 29, 2014.  (Dkt. Nos. 150
26 & 153.)  The underlying motion for default judgment followed.

3

**DISCUSSION**

**I.     Jurisdiction and Service of Process**

When a court is considering whether to enter a default judgment it has "an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court may exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332: Plaintiff is incorporated in Connecticut and its principle place of business is in Connecticut, and Defendant NBC is a California corporation with its principle place of business in Oakland, California. (Dkt. No. 1 ¶¶ 3–4.) The individual defendants are likewise residents of California. (*Id.* ¶¶ 5-6.) The amount of damages which Plaintiff seeks is in excess of $75,000. The Court has personal jurisdiction because NBC is a California corporation that engages in business activities in the Northern District of California.

A court is also required to "assess the adequacy of the service of process on the party against whom default is requested." *Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters*, No. 00–0395, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). Federal Rule of Civil Procedure 4(e) provides that service in accordance with California law is proper. Under California law, a corporation may be served by delivering a copy of the summons and of the complaint to the person designated as agent for service of process. *See* Cal. Civ. P. Code § 416.10(a). As this is not your typical case wherein the defendant failed to enter an appearance, the Court must ensure valid service of the filings following the district court's order granting counsel's motion to withdraw. Plaintiff's motion for default judgment was served on NBC's agent for service of process. (Dkt. Nos. 139-2 & 154-2.)

**II.    Default Judgment**

After entry of default, a court may grant default judgment on the merits of the case. *See* Fed. R. Civ. P. 55. The factual allegations of the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A court should consider the following factors in determining whether to enter default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The majority of the *Eitel* factors support default judgment.  First, if the Motion were to be denied, then Plaintiff would likely be left without a remedy given NBC's failure to obtain new counsel and the subsequent entry of default.  *See Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *see also Employee Painters' Trust v. Ethan Enterprises*, *Inc*., 480 F.3d 993, 998 (9th Cir. 2007) (recognizing default as a permissible sanction for failure to comply with local rules requiring representation by counsel).  Second, because NBC has not obtained substitute counsel the possibility of a dispute concerning material facts is unknown.  Third, there is no evidence in the record that NBC's failure to obtain counsel after being order to do so by the Court was the result of excusable neglect.  Fourth, the sum of money being sought by Plaintiff is reasonable in that it is tailored to the specific misconduct of NBC; namely, Plaintiff seeks to recoup the amount of damages incurred when NBC failed to defend, indemnify, and hold harmless Hartford from all loss, costs, and expenses paid by Hartford.  This is the same amount as sought in Plaintiff's summary judgment as to Defendant Ung and the district court determined that Plaintiff's principal loss under the bonds was $3,9991,654.17.  *See Pepsico*, 238 F. Supp. 2d at 1176 (stating that "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct").  Finally, although the seventh *Eitel* factor, which favors decisions on their merits, weighs against default judgment, the Court finds that this factor is not dispositive.

Having determined that on balance the *Eitel* factors discussed above support Plaintiff's Motion, the Court turns to the merits of Plaintiff's substantive claims and the sufficiency of the evidence (the second and third *Eitel* factors).  These factors essentially require Plaintiff to state a claim on which it may recover.  *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

**A. Plaintiff's Breach of Contract Claim**

Plaintiff contends that NBC breached the terms of the Indemnity Agreement by failing to

defend, indemnify and hold Plaintiff harmless from: (1) the claims paid by Plaintiff under the Bonds; and (2) the attorney's fees and costs, consultant's fees and costs, and other expenses paid by Plaintiff to investigate and resolve claims under the Bonds and to enforce its rights under the Indemnity Agreement.

This diversity case arises in California, meaning that California law applies. *Allstate Ins. Co. v. Smith*, 929 F.2d 447, 449 (9th Cir. 1991). The elements of a breach of contract claim under California law are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff. *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968) (internal citation omitted). On default, the well-pleaded factual allegations of the complaint are accepted as true. *Pepsico*, 238 F. Supp. 2d at 1177. Plaintiff here has further supplemented the record with the Declaration of Richard Levesque which attaches the Indemnity Agreement. The Indemnity Agreement was executed by Defendants, including Defendant Ung on behalf of NBC, on February 27, 2006. (Dkt. No. 127-2 at 16.) The Indemnity Agreement identifies NBC as an indemnitor and according to Paragraph 5 the indemnitors agreed that:

> they are jointly and severally liable to Hartford, and will indemnify, exonerate and hold Hartford harmless for all loss, liability, damages and expenses…which Harford incurs or sustains (1) because of having furnished any Bond, (2) because of the failure of an Indemnitor to discharge any obligations under this Agreement, (3) in enforcing any of the provisions of this Agreement, (4) in pursuing the collection of any loss incurred hereunder, or (5) in the investigation of any claim submitted under any Bond.

(Dkt. No. 127-2 at 13.) Plaintiff has further offered evidence showing that it performed its obligations under the Indemnity Agreement by issuing the Bonds, and that NBC breached the Indemnity Agreement by failing to indemnify Plaintiff. (Dkt. No. 127-2 ¶¶ 10-13, 35-36.) Plaintiff has also proffered evidence demonstrating that it is entitled to damages in the amount of $5,572,663.42, which consists of the principal amount of $3,991,654.17, plus interest in the amount of $1,581,009.25.[3] (*Id.* ¶¶ 14-28, 30-34, Exhs. 2-3.) Based on the foregoing, Plaintiff is entitled to default judgment on its claims against NBC.

**III. Damages and Prejudgment Interest**

Once a court has determined default liability, the plaintiff must then establish that the

6

1  requested relief is appropriate. *See Geddes*, 559 F.2d at 560. Plaintiff seeks $3,991,654.17 in
2  damages plus prejudgment interest. Addressing the amount of damages sought first, the Court
3  finds that Plaintiff is entitled to $3,991,654.17 which represents the total amount of claims paid by
4  Plaintiff under the Bonds less the funds recovered from third-parties. (Dkt. No. 127-2 ¶ 13 & Ex.
5  2.) Notably, the district court previously held that Plaintiff was entitled to this amount in damages
6  as to Plaintiff's claims against Defendant Ung. (Dkt. No. 137.) Plaintiff also seeks prejudgment
7  interest under California Civil Code § 3289(b) which provides that "[i]f a contract entered into
8  after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at
9  a rate of 10 percent per annum after a breach." Plaintiff thus seeks $1,581,009.25 in interest
10 based a rate of 10% per annum from the date of each disbursement paid by Plaintiff through and
11 including April 8, 2014. (*Id*. at Ex. 3.) Based on the foregoing, Plaintiff is entitled to a total of
12 $5,572,663.42 which includes damages and prejudgment interest.

## CONCLUSION

For the reasons explained above, the Court recommends that Plaintiff's Motion for Default Judgment (Dkt. No. 154) be GRANTED. The Court recommends that judgment be entered in favor of Plaintiff, and that Plaintiff be awarded a total of $5,572,663.42. Plaintiff shall serve a copy of this report and recommendation on NBC within three business days from the filing date of this report and recommendation and shall file a proof of service with this Court.

Any party may file objections to this report and recommendation with the district court judge within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); Civil L.R. 72-3. Failure to file objections within the specified time may waive the right to appeal the District Court's ultimate Order.

**IT IS SO ORDERED.**

Dated: September 2, 2014

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

7